The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Cris V. CALDWELL, Defendant–Appellant.

No. 99CA1092.

Colorado Court of Appeals, Div. II.

Sept. 13, 2001.

Rehearing Denied Nov. 29, 2001.

Certiorari Denied April 15, 2002.

Ken Salazar, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Cris V. Caldwell, appeals the judgment of conviction entered upon a jury verdict finding him guilty of attempted first degree murder after deliberation, first degree assault, and two related crime of violence counts. We affirm.

Defendant shot at a sheriff's deputy while the deputy was attempting to stop defendant's vehicle. The deputy was not injured, although one of the bullets struck his bullet-proof vest.

Two bullets were recovered from the deputy's vehicle. While defendant did not own a gun, he had access to one through a friend who was living at his house at the time of the shooting. According to the ballistics report, the bullets recovered from the deputy's car could have been fired only from that gun. In addition, the license plates of defendant's vehicle partially matched the description given by the deputy after the shooting, as did the general style of defendant's car.

A friend of defendant testified that defendant admitted he shot at the deputy because he did not want to be stopped and charged with driving under the influence of alcohol.

I.

On an issue of first impression, defendant contends that the trial court erred in admitting the testimony of a lay witness concerning ballistics and bullet trajectory. We disagree.

A nonexpert witness may testify to opinions or inferences, in addition to perceptions, as long as they are rationally based on the witness' own perceptions and are helpful to the jury in understanding the testimony or determining a fact in issue. CRE 701. If, however, the opinion or inference expressed is beyond common experience or is based on knowledge of a scientific, technical, or specialized nature, the witness must qualify as an expert in the relevant field. CRE 702.

A trial court has broad latitude in determining whether a lay witness is qualified to express opinions. Thus, only if there is an abuse of this discretion will the trial court's decision be disturbed on review.

*Hock v. New York Life Ins. Co.,* 876 P.2d 1242 (Colo.1994).

Here, a former police officer, employed as a crime scene technician at the time of the shooting, testified that after the shooting, he photographed and collected evidence from the deputy's patrol car. He also testified about the appearance and location of the two bullet holes on the outside of the car, the hole inside the car, and the dimpling of the metal inside the car. From his own observations and the use of a dowel and string, the technician testified that he tracked the paths of the two bullets, one that entered the vehicle just in front of the driver's side window near the spotlight and another that entered the vehicle through the metal frame behind the rear window, also on the driver's side. The photos of the vehicle depicting the bullet holes, fragments, and the dowel and string used by the technician were also introduced into evidence.

Defendant objected to the introduction of the photographs and to the witness' opinion testimony regarding the trajectory of the bullets. Defendant asserted that the witness was not qualified as an expert under CRE 702, and that such testimony was of a scientific nature, beyond the common experience of the jury. The trial court overruled the objections.

We note that, generally, expert testimony is required when introducing ballistics evidence, because such testimony is often introduced to explain how the shooting occurred, the position and proximity of the shooter in relation to the victim, and the existence or absence of self-defense. *See, e.g., State v. Mincey,* 130 Ariz. 389, 636 P.2d 637 (1981); *State v. Saunders,* 317 N.C. 308, 345 S.E.2d 212 (1986); *State v. Walters,* 551 A.2d 15 (R.I.1988).

Here, however, the witness' testimony included only his observations about the entry locations of the bullets and the path they traveled inside the vehicle. Such observations could just as easily have been made by the jury from the photographs. No special expertise is required to look at the hole made by the bullet and realize that it followed a straight-line path. See *United States v.*

*Pierson,* 503 F.2d 173 (D.C.Cir.1974)(a layman, under certain circumstances, can look at a bullet hole in a wall and see whether it appears to come from one direction or another; no special expertise is required). Consequently, we perceive no abuse of discretion in the trial court's ruling allowing this lay witness' opinion testimony.

Defendant's reliance on *People v. Stewart,* 26 P.3d 17 (Colo.App.2000)(cert. *granted* June 25, 2001), is misplaced. In that case, a division of this court determined that the trial court had abused its discretion in allowing a police officer, who had investigated the scene of an assault involving a motor vehicle, to testify regarding his experimentation with respect to, and his reconstruction of, the incident, without first qualifying him as an expert. The division found that while the testimony was not encumbered with scientific terminology and the trappings of complex theories, it involved considerably more than common experience and required practical knowledge of a scientific, technical, or specialized nature.

In contrast, here, the witness did not conduct any experiments or attempt to reconstruct the incident. Rather, he testified about the location of the bullet holes and the paths of the bullets that were evident from the photographs without any additional explanation. Thus, the witness was not conveying information that required a specialized or scientific knowledge to understand. Consequently, *People v. Stewart, supra,* is inapposite.

## II.

Asserting a violation of his due process and confrontation rights, defendant contends that the trial court erred by admitting testimony from the prosecution's ballistics expert regarding the results of an independent examination of the bullets and weapon that confirmed his initial findings and hearsay statements by defendant's wife concerning defendant's guilt. We conclude that any error was harmless beyond a reasonable doubt.

■ CRE 801(c) defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hear-

ing, offered in evidence·to prove the truth of the matter asserted." Generally, unless a specific exception applies, hearsay statements are inadmissible. See *People v. Griffin,* 985 P.2d 15, 17 (Colo.App.1998).

■ However, errors in the admission of evidence, even of constitutional dimension, do not require reversal of a criminal conviction if the error is harmless beyond a reasonable doubt. To determine whether such an error is harmless, an appellate court must examine the facts of the case to determine whether the error affected the outcome of the case. *Topping v. People,* 793 P.2d 1168 (Colo.1990). For example, if the evidence is merely cumulative and does not substantially influence the verdict or affect the fairness of the trial proceedings, any error in its admission is harmless. See *People v. Fuller,* 788 P.2d 741 (Colo.1990).

### A.

■ On direct examination, the prosecution's ballistics expert testified that he had no doubt that the bullets recovered from the deputy's car were fired from the gun retrieved from the friend who had been staying at defendant's home. In addition, he testified that pursuant to an internal policy, his findings were subjected to a peer review process. When asked whether the review process confirmed his findings, defendant objected, asserting that such evidence was hearsay. The trial court overruled the objection, and the expert testified that the second examination confirmed his conclusions.

Because the challenged statement was merely cumulative of the expert's own uncontested findings, and there was other evidence to support defendant's conviction, we conclude that the challenged statement did not substantially influence the verdict or affect the fairness of the trial proceedings. Thus, even if we assume that the challenged statement constituted inadmissible hearsay, any error occasioned by the admission of this statement was harmless beyond a reasonable doubt. See *People v. Griffin,* supra (concluding that erroneous admission of hearsay statement regarding confirmation of expert's conclusion was harmless beyond a reasonable

doubt because it was merely cumulative and defendant's guilt was supported by other evidence).

Here, defense counsel cross-examined the prosecution's expert, but made no attempt to challenge or discredit the expert's conclusion that the bullets came from the gun that was in defendant's house. Instead, he limited his inquiries to whether the witness was biased in favor of the police and prosecution. In addition, defendant did not present his own expert to refute any of the findings and opinions of the testifying expert.

Further, during closing argument, defense counsel did not argue that the expert's conclusions were erroneous, but rather focused on the fact that the prosecution could not positively place defendant with that gun at the time of the shooting.

Accordingly, we find no grounds for reversal here.

### B.

Defendant also asserts his wife's statements to the deputy regarding his guilt should not have been admitted. Again, we conclude that any error in the admission of this testimony was harmless beyond a reasonable doubt.

Here, the deputy testified that approximately three months after the shooting, he went to defendant's house to investigate an unrelated matter. At that time, defendant's wife told him that her husband was the one who had shot at him a few months earlier.

Defense counsel objected, claiming that the wife's statement was inadmissible hearsay. The prosecution argued that the statement was admissible as an excited utterance because she had become visibly upset and had sobbed when she read the deputy's nametag. Agreeing with the prosecution, the trial court overruled the objection.

Because defendant's wife testified at trial about her statements to the deputy, the admission of the statement during the deputy's testimony was cumulative of other properly admitted evidence. Consequently, the error, if any, was harmless beyond a reasonable doubt. See *People v. Griffin,* supra.

To the extent defendant argues that his wife's statement was inadmissible because it was not based on her own perceptions but, rather, was based on information she had heard from a third party, we first note that defendant did not object on this basis at trial. Therefore, we review for plain error. *See Wilson v. People,* 743 P.2d 415 (Colo.1987). Under that standard, we will not reverse unless, after reviewing the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People, supra.*

Because another witness testified that defendant had admitted committing the crime to him and that he had later told defendant's wife about the admission, we find no plain error in the admission of the wife's testimony under these circumstances.

### III.

Again asserting a violation of his confrontation rights, defendant contends that the trial court erred when it limited cross-examination of a prosecution witness pertaining to the witness' bias, motive, and character for truthfulness. We disagree.

### A.

An accused has the right to confront witnesses. Confrontation includes exploration of bias, motive, or prejudice to discredit the witness and to affect the weight of the testimony. *Merritt v. People,* 842 P.2d 162 (Colo.1992).

Here, one of the prosecution's key witnesses testified that he and defendant were close friends and that defendant admitted shooting at the deputy. The witness also testified that while living in California, he had accepted unemployment compensation while he was gainfully employed and that he had pleaded guilty to a felony in relation to that activity. The witness admitted that his felony conviction would be reduced to a misdemeanor in exchange for payment of a fine and testimony against defendant.

On cross-examination, defense counsel questioned the witness extensively regarding the circumstances of this unemployment compensation case and impeached his credibility by specifically referencing the benefit that he would gain from his testimony against defendant. Defense counsel was also permitted to examine the witness concerning another deferred judgment case pending against him, which also could be affected by his agreement to testify. However, the trial court sustained the prosecution's objection to examination concerning a different pending California case in which defense counsel asserted that the witness had also been charged with insurance fraud.

■ We fail to discern how another pending case, not involved in any plea agreement, and the outcome of which was not dependent upon testimony in the instant matter, would be probative of bias, motive, or prejudice. Without such a connection, the witness would not be testifying out of fear or concern of possible jeopardy to the outcome of the pending matter. *Cf. Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Unless such a connection can be shown, a pending criminal charge against a witness is an improper subject for impeachment. *See People v. Pratt*, 759 P.2d 676 (Colo.1988).

Accordingly, we reject this contention.

### B.

■ Concerning the witness' poor character for truthfulness, CRE 608(b) permits a court, in its discretion, to admit evidence of specific instances of conduct on cross-examination if it is probative of truthfulness or untruthfulness. *People v. Jones*, 971 P.2d 243 (Colo.App.1998). However, as a general rule, specific instances of prior conduct may not be proven by extrinsic evidence to impeach the credibility of the witness. *People v. Cole*, 654 P.2d 830 (Colo.1982); *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976).

■ Moreover, unproven accusations of criminal behavior do not by themselves raise an inference of improper actions. Thus, for example, an arrest or a pending criminal charge generally is an improper subject for impeachment. See *People v. Pratt*, supra.

■ The decision whether to allow an inquiry into specific instances of conduct is within the discretion of the trial court. Absent a showing of an abuse of discretion, the trial court's rulings will not be disturbed on review. *People v. Pratt, supra*.

■ Under CRE 103, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

■ Here, defense counsel sought to cross-examine the witness regarding a separate insurance fraud case and a former juvenile proceeding, both of which arose in California. However, in response to defense counsel's question about the insurance fraud case, the witness denied any knowledge of it.

On the prosecution's objection, the trial court excluded the line of questioning as repetitive and instructed the jury to disregard counsel's questions and the witness' answer.

The record contains no information about the insurance fraud case, so we cannot determine whether the insurance fraud and unemployment cases were independent, or whether the trial court incorrectly ruled that the line of questioning was repetitive of other issues already covered. Nevertheless, under these circumstances, we conclude that the trial court did not abuse its discretion in sustaining the prosecution's objection to defendant's questions, even if the trial court's stated reason for its ruling was incorrect. See *People v. Drake*, 748 P.2d 1237 (Colo. 1988).

While the details of the witness' involvement in insurance fraud would be probative of his veracity under CRE 608(b), defense counsel made no offer of proof regarding the details of that incident. In addition, when questioned about the matter, the witness denied any knowledge of such a separate insurance fraud case, and under CRE 608(b),

counsel could not introduce extrinsic evidence to prove it. See *People v. Cole*, supra.

Similarly, counsel failed to make an offer of proof regarding the witness' juvenile record. Thus, we have no information with which to ascertain whether inquiry into that incident was probative of the witness' character for truthfulness. Absent such a basis, inquiry into juvenile convictions is generally not permitted. See *People v. D'Apice*, 735 P.2d 882 (Colo.App.1986).

Consequently, defendant has failed to demonstrate any prejudice resulting from his inability to question the witness about these two instances of prior conduct. See CRE 103(a)(2); *People v. Deeds*, 712 P.2d 1055, (Colo.App.1985), *aff'd*, 747 P.2d 1266 (Colo. 1987). Thus, we perceive no abuse of discretion in the trial court's decision to prohibit inquiry into these matters.

## IV.

Asserting a violation of his constitutional due process and jury trial rights, defendant next contends that the court erred in failing properly to instruct the jury on the elements of attempted first degree murder. Specifically, defendant argues the instructions did not adequately inform the jurors that they needed to find that he acted after deliberation and with the specific intent to cause death. We agree, but find no reversible error.

Defendant did not object to the instruction at the time of trial. Therefore, our review is under the plain error standard, which requires reversal only if, after reviewing the record, it may be said with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. See Crim. P. 52(b); *Gann v. People*, 736 P.2d 37 (Colo.1987).

A person commits criminal attempt if, "acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." Section 18–2–101(1), C.R.S. 2000. In this case, a "substantial step" un-

der the criminal attempt statute requires proof of the intent to commit first degree murder. And, because first degree murder includes as a culpability element that the act must be committed after deliberation and with the intent to kill the victim, the crime charged requires both the intent to commit first degree murder and commission of the act after deliberation. Section 18–3–102(1), C.R.S.2000; *Gann v. People*, supra; *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983).

Here, the jury was instructed that the elements of the crime of criminal attempt to commit first degree murder are that the defendant intentionally engaged in conduct constituting a substantial step toward the commission of first degree murder. As relevant here, the jury was also instructed that the elements of the crime of first degree murder are that the defendant, with intent to cause the death of a person other than himself, after deliberation, caused the death of that person.

Thus, as in *Gann v. People*, supra, the attempt instruction here was erroneous because the jury was instructed on only one of the elements of culpability. The instruction omitted any reference to the requirement that the defendant must have acted after deliberation and with the intent to cause death. The preferable practice is to include the *mens rea* element of an offense in the instruction defining the offense. *Gann v. People*, supra. We therefore disapprove of the trial court's formulation of the attempt instruction.

We conclude, however, that the erroneous attempt instruction did not constitute plain error. In ascertaining whether there was plain error, the instructions must be considered as a whole to determine whether the jury was properly advised as to the law. *People v. Riley*, 708 P.2d 1359 (Colo.1985); *People v. Deadmond*, 683 P.2d 763 (Colo.1984). The failure to include the culpable mental state in the instruction defining the offense is not plain error as long as the instructions, read and considered in their entirety, clearly instruct the jury as to the required *mens rea*. *People v. Mattas*, 645 P.2d 254 (Colo.1982).

Here, the attempt instruction advised the jury that, to find defendant guilty of attempted first degree murder, the prosecution was required to prove beyond a reasonable doubt that defendant engaged in "conduct constituting a substantial step toward the commission of first degree murder." The following instruction clearly articulated that "intent to cause death" and "after deliberation" were essential elements of the crime of first degree murder. Thus, the culpability elements of intent and deliberation were prominently included in the definition of the crime of first degree murder. Consequently, the error in the attempt instruction does not constitute plain error. See *Gann v. People*, supra; *People v. Mendez*, 897 P.2d 868 (Colo.App. 1995).

## V.

■ Defendant next contends that he was denied his constitutional right to a fair trial because during closing arguments the prosecution incorrectly stated the law regarding deliberation. We disagree.

Because defendant did not object at trial to the prosecutor's statement, we again review only for plain error. *See Wilson v. People, supra.*

Here, during the rebuttal portion of closing arguments, the prosecution told the jury that "deliberation only requires the time necessary for one thought to follow another." Even if we assume that such a statement is incorrect under the current statutory scheme, *see Key v. People*, 715 P.2d 319 (Colo.1986), we nevertheless conclude that it does not rise to the level of plain error.

The statement occurred only once. Further, the trial court properly instructed the jury on the elements of first degree murder after deliberation and provided the correct definition of deliberation. Indeed, the prosecutor argued in closing that defendant had to have taken time to make a decision before shooting at the deputy. Thus, we cannot say that this statement contributed to defendant's conviction.

## VI.

Defendant also contends that the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt as to the attempted first degree murder charge. Specifically, defendant asserts that the prosecution failed to prove that he acted after deliberation and with the specific intent to cause death. We reject both contentions.

■ When reviewing the sufficiency of the evidence, we must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

■ The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Inman*, 950 P.2d 640 (Colo.App. 1997). If the prosecution presents evidence from which the trier of fact may properly infer the elements of the crime, the evidence is sufficient to sustain the conviction. See *People v. Montano*, 195 Colo. 420, 578 P.2d 1053 (1978).

### A.

Deliberation means that the act was committed "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." Section 18–3–101(3), C.R.S.2000.

■ Here, the evidence indicated that defendant left the parking lot of a convenience store without turning on his headlights. The deputy followed defendant for a short distance and then turned on his siren and overhead lights in an attempt to stop defendant's car. However, defendant did not immediately stop, but continued driving before pulling into another parking lot. As the deputy stopped just inside the parking lot in anticipation of defendant stopping, defendant's vehicle continued into the parking lot, made a U-turn, and circled back toward the deputy.

Defendant approached the deputy going twenty to thirty miles per hour and then, with his window down, raised a gun and fired the shots at the deputy as his vehicle passed the deputy's patrol car.

Viewing the foregoing evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence to support a conclusion that defendant acted with deliberation. The jury could reasonably have concluded that defendant reflected upon his decision while the deputy was following him because he did not attempt to elude the officer by speeding through traffic, nor did he stop immediately after the deputy turned on his lights and siren. Rather, he drove to another parking lot and turned his vehicle around, driving back toward the deputy before firing the shots. Thus, we reject defendant's contention.

### B.

■■■ As for the element of "intent to cause death," defendant contends that if he had intended to cause the deputy's death, he could have waited for the deputy to exit his vehicle and approach him before shooting. Because the shots were fired while the deputy was inside his vehicle, defendant contends that the evidence did not establish that he intended to cause the deputy's death. We disagree.

The prosecution's evidence indicated that two shots were fired at the deputy at close range while the deputy was in his vehicle. The shots were not merely random shots in the deputy's direction. Rather, one of the shots actually struck him, causing a tear in his bulletproof vest. The evidence also demonstrated that the second shot, although fired as defendant's car was almost past the patrol car, was fired at an angle such that the bullet was traveling from the back of the car to the front, where the deputy was seated. The fact that defendant could have been more proficient in his aim or more calculating in his execution does not negate the fact that the evidence would allow a jury to properly infer that defendant acted with intent to kill. See *People v. Montano, supra.* Thus, we reject defendant's contention.

### VII.

Defendant's final contention is that cumulative errors committed by the trial court require reversal of his conviction. We reject this contention.

When individual errors in a trial do not require reversal, but in the aggregate show the absence of a fair trial, reversal is required. Conversely, when, as here, errors do not reflect the absence of a fair trial, reversal is not required. See *People v. Roy,* 723 P.2d 1345 (Colo.1986).

The judgment is affirmed.

Judge PLANK and Judge NEY concur.